## Case No. 7,881.

### KNIGHT v. The ATTILA.

[Crabbe, 326.] [1]

District Court, E. D. Pennsylvania. Sept. 24, 1838. [2]

PLEADING IN ADMIRALTY—PLEA TO JURISDICTION — WANT OF JURISDICTION APPEARING IN LIBEL —PLEA IN BAR — MARITIME LIENS — BOTTOMRY BOND—MONEY NOT INTENDED NOR APPLIED FOR VOYAGE.

1. Where no want of jurisdiction appears on the libel, but a plea to the jurisdiction is put in, and the case is heard on that question alone, the plea will be overruled.

2. Where it appears on the face of the libel that the court has not jurisdiction, or that the libellant has not capacity to sue, the respondent may remur: but if the incapacity does not appear, though true in point of fact, the respondent must take advantage of it by pleading in bar.

3. A bottomry bond, given in a home port. for money not intended to be used for, nor actually applied to, the purposes of the voyage, will not support a libel in this court.

This was a libel for bottomry. The libel was filed on the 30th April, 1838, and was, in effect, as follows: That the Commonwealth Insurance Company, chartered by the legislature of Massachusetts, on the 21st December, 1836, loaned and advanced to Fessenden, Thompson and Company, two thousand dollars, on bottomry, on the body, tackle, and furniture of one-third of the brig Attila, of Boston; the said Fessenden, Thompson and Company being sole owners of said one-third part, and —— Hall being master of the said brig. That the Attila was then lying at Boston, bound on a voyage to Genoa. That the said loan was for one year from the said 21st December, 1836, at marine interest of eleven per cent., said brig having liberty of any ports or places, during said period. And the said owners, on said 21st December, 1836, in consideration of, and as security for, said loan and interest, by an instrument of bottomry and hypothecation, of the same date (a copy of which was annexed to the libel), did hypothecate and transfer the said one-third of the said brig, to the said company, for payment of the said loan and interest, at the end of sixty days after the expiration of said one year, with interest at six per cent. after expiration of one year and until the same should be paid, and did agree that if the loan and interest, or any part thereof, should remain due and unpaid, said company might sell the said one-third of said brig at auction, to satisfy the sum due. And the libellant averred that said term of one year and sixty days had fully expired at the date of filing the said libel, and the said Fessenden, Thompson and Company

---

[1] [Reported by William H. Crabbe, Esq.]

[2] [Affirmed by the circuit court; case unreported.]

had not paid the sum due and interest, or any part thereof, and the said brig Attila arrived at Philadelphia on the 26th April, 1838, where she still remained, and the said owners had refused to transfer or deliver the said one third part of said brig to said company, or the libellant, and had refused to permit the same to be sold. The libellant further said, that on the 21st February, 1838, the said Commonwealth Insurance Company, in consideration of two thousand dollars paid by the said Manassah Knight, of Boston, assigned to him all the right and interest of the said company to the said instrument of bottomry or hypothecation and advantage thereon accruing, to which assignment their corporate seal was duly attached. Wherefore the libellant prayed process, &c. To this libel Fessenden, Thompson and Company replied by filing a plea to the jurisdiction, and by an answer traversing and requiring proof of the facts, in the usual form.

On the 18th September, 1838, the case came before Judge HOPKINSON. for a hearing on the question of jurisdiction only.

Mr. Rawle, for respondents.

This case turns on the nature and extent of the admiralty jurisdiction under the constitution and laws of the United States. Judge Story extends this jurisdiction to charter-parties, and even to policies of insurance. De Lovio v. Boit [Case No. 3,776]; The Draco [Id. 4,057]. And see Ramsay v. Allegreve, 12 Wheat. [25 U. S.] 638; Davis v. The Seneca [Case No. 3,650]; Bains v. The James and Catherine [Id. 756]. It is very certain that courts of admiralty in England, and in this country prior to the Revolution, did not exercise jurisdiction in cases like this. In The Draco [supra], Judge Story says that these contracts are a novelty in our own courts. In order to give cognizance to the admiralty, the contract must be maritime, that is, for the furtherance of the voyage, and not merely a loan on the security of the vessel, and, also, it must not be cognizable by the common law courts. 12 Coke, 79, "Admiralty;" "The case of the Admiralty," 13 Coke, 51; Ross v. Walker, 2 Wils. 264; Howe v. Nappier, 4 Burrows, 1944; Day v. Searle, 2 Strange, 968. A bottomry bond is, generally, for a loan made to the master, in a foreign port, for the furtherance of the voyage. In such a case admiralty has jurisdiction. But no case is to be found where the admiralty has taken jurisdiction when the money was borrowed in a home port, even if for the purposes of the voyage. Johnson v. Shippen, 2 Ld. Raym. 983; Busk v. Fearon, 4 East, 319. This doctrine was never called in question but by Judge Story. 3 Kent, Comm. (3d Ed.) pp. 352, 360, 361, § 49; The Mary [Case No. 9,187]; Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 332; Hurry v. The John and Alice [Case No. 6,923]. The contract is made on land and is to be performed on land. In this contract or bond, there is no reference to the voyage, nor its objects, nor is the loan said to be for its prosecution; nor does the libel make any such allegation. The loan does not appear to have had any connexion with the voyage or its objects. It was a mere borrowing of a sum of money, for the securing of which the vessel was bound, and marine interest given. But even on Judge Story's view of the law, the libellant cannot come here to prosecute his claim, because the parties provided their own remedy, excluding the admiralty jurisdiction; the transfer of the vessel is absolute, with power in the lender of the money to sell, without the interference of any court.

J. R. Ingersoll, for libellant.

The Draco [supra], is precisely the same case as this. The question here is, whether a bottomry bond, given by the owner, in a home port, is a subject of admiralty jurisdiction. In Maryland, in 1804, in New York, in 1824, and in Massachusetts, in 1835, the jurisdiction in such cases has been distinctly recognised, and there is no case to the contrary. Gardner v. The New Jersey [Case No. 5,233], Judge Winchester's opinion; The Barbara. 4 C. Rob. Adm. 1; Peyroux v. Howard, 7 Pet. [32 U. S.] 341; Zane v. The President [Case No. 18,201]; Forbes v. The Hannah [Id. 4,925].

HOPKINSON, District Judge. If the plea which has been filed in this case, were stated in full, it would be simply this: that the court has not jurisdiction, because it does not appear on the face of the libel, or by the contract, that the bottomry loan, for which the bond was executed, was made in a foreign port. Such a plea would not be good. But the ground has been taken, that the money, in point of fact, was not borrowed for the purposes of the voyage, and that the contract, therefore, is not cognizable in an admiralty court. If this is so, then, to give it effect, it should have been specially stated, as ousting the jurisdiction; and, being a matter of fact, the libellant could have replied, either by taking issue on the fact, or by alleging the jurisdiction, notwithstanding. Or, if the respondents think that the facts of the case ought to appear on the libel, to give the court jurisdiction, why did they not demur to the libel, as not showing sufficient cause against them, and rest the case upon that point. Or, yet another course was open to them. They might have more fully set out, by way of special answer, that, admitting the matters of fact alleged in the libel to be true, they were insufficient for the libellant to proceed upon, or to oblige the respondents to answer; or that, from some reason apparent on the face of the libel, or by reason of the omission of some fact which ought to be contained therein, or for want of some circum-

stances which ought to be apparent therefrom, the respondents ought not to be compelled to answer; and have asked the judgment of the court whether they ought to be compelled to answer. The demurrer in equity, as in law, can only be for objections apparent on the bill itself; either from matters contained in it, or from some defect in form; and this principle is equally applicable to the case before us. The demurrer cannot state what does not appear on the face of the libel, and therefore, in this case, it could not state that the loan was made in a home port, for that does not appear, and, therefore, if that matter of fact is the ground of objection, it should have been set out, as any other fact in an answer. The demurrer could only have stated that the fact of the loan being in a foreign port did not appear, and that would not oust the jurisdiction. If it appears on the face of the libel that the libellant is not entitled to sue, as in the case of an infant or a married woman, the respondent may demur; but if the incapacity does not appear in the libel, although true in point of fact, then the respondent must take advantage of it by pleading in bar, or by answer. If it appear on the face of the libel that the court has not jurisdiction of the case, the respondent may demur; for instance, if it had been affirmatively stated in this libel that the loan was in a home port, and if in such a case the court would not have jurisdiction, it would be ground for demurrer. The plea to the jurisdiction is overruled.

The respondents having obtained leave to amend their answer, filed an amendment in effect as follows:

Respondents say, that in December, 1836, they were co-partners in trade in Boston, and the owners of one third part of the said brig Attila. In the said month they borrowed of the Commonwealth Insurance Company two thousand dollars, and executed as security the bond mentioned in the libel, by which the said third part of the said brig was transferred in pledge or mortgage to the said insurance company. There was no agreement or understanding between the company and the firm that the money so loaned should be applied to said vessel or her cargo, in any wise. In consideration of the execution of the said bond, they received from the said company a check, payable at a future day, and its amount was not collected or received until the vessel had sailed on a foreign voyage, and was not, nor was any part thereof, expended on said vessel nor about her voyage.

The case came on for a hearing on the amended answer, before Judge HOPKINSON, on the 24th January, 1840, and evidence was given in support of all the matters of fact alleged in the answer. The case was argued by the same counsel.

J. R. Ingersoll, for libellant.

The question to be argued is one of pure admiralty law: it is whether a bottomry pledge, given by an owner in his own port and place of residence, for money not used upon the ship, or in the voyage, is a proper subject of admiralty jurisdiction. This depends upon a series of judicial adjudications for its answer. American Ins. Co. v. Canter, 1 Pet. [26 U. S.] 511; Hand v. The Elvira [Case No. 6,015]. The agreement of the parties in this case, gives a lien as well as if it were given by the local law, and this court may take cognizance as well in the one case as the other. There is no local law prohibiting such an agreement. Where repairs are made upon a vessel, the law gives a lien without the consent of the party; here, the consent of the parties gives the lien without the action of the law. The Virgin, 8 Pet. [33 U. S.] 538. Had the bond been given by the captain, it would undoubtedly have created a maritime lien. There must be necessity to justify the captain in hypothecating the ship, as he is only an agent; but the principal, the owner, needs no necessity, no justification to act as he pleases with his own. Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328; Tunno v. The Mary [Case No. 14,237]; Boreal v. The Golden Rose [Id. 1,658]; The Mary [Id. 9,187]; Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386, 429, 436. If the owner of a ship coming from Canton goes to an insurance company, produces the bill of lading, and borrows money on it on respondentia, the money is not applied to the cargo or the voyage, nevertheless the lien is good. The Draco [Case No. 4,057]; Bains v. The James and Catherine [Id. 756]. The Draco, is the very case of the Attila. The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175.

Mr. Rawle, for respondent.

The libellant relies entirely on the decision of Judge Story, in The Draco [supra]. We rely on Judge Baldwin's opinion. The nature and extent of admiralty jurisdiction has been a fruitful source of difference of opinion among our most eminent jurists. Ramsay v. Allegreve, 12 Wheat. [25 U. S.] 614, 631, 632, 638, 640; Davis v. The Seneca [Case No. 3,650]; Bains v. The James and Catherine [supra]. Admiralty courts in England exercised no such jurisdiction at the time of the adoption of the constitution, as is now claimed here. Even Judge Story confesses these things to be novelties in our courts. The Draco [supra]. To give the admiralty jurisdiction, the contract should be strictly maritime, and in furtherance of the voyage, and there should be no remedy at common law. "The Admiralty," 12 Coke, 79; "The case of the Admiralty," 13 Coke, 51. Seamen's wages are the only case of contract in which both courts have jurisdiction. Howe v. Nappier, 4 Burrows, 1944,

1950; Day v. ·Searle,· 2 Strange, 968;·· Ross v. Walker, 2 Wils. 264. A bottomry bond, properly speaking, is given in a foreign port, by the master of a vessel, to enable the voyage to be prosecuted. There is no case where the admiralty has taken jurisdiction when the loan was ·in a home port, even if for the purpose of the voyage. Johnson v. Shippen, 2 Ld. Raym. 983; Forbes v. The Hannah [Case No. 4,925]; Hurry v. The John and Alice [Id. 6,923]. In the case of The Draco, Judge Story referred to Conard v. Insurance Co., 1 Pet. [26 U. S.] 511, only on the point of ·the validity of the contract, not on ·the question of jurisdiction. Even by ·the civil law, a bottomry bond is never given but for a loan for purposes of the voyage. The Draco [Case No. 4,057].

We do not dispute the validity of the contract, but only ·the remedy for it in this court. It is a contract made in the body of a ·county, on the pledge of a chattel, which happens to be a ship. It is not a maritime contract, but an ordinary loan on security, with a personal obligation to pay the money. In the case of several bottomry bonds, the money loaned last is paid first, for it was loaned for the benefit and security of previous lenders. But it would not be so in this case, the loan not having been made for any such purpose. The parties to this bond have provided their own remedy, and given express directions how it was to ·be employed; this court, therefore, has no right to interpose.

J. R. Ingersoll, for libellant, in conclusion.

Conrad v. Insurance Co., although not an ad-miralty case, was an action of trespass for interfering with a maritime contract, and is, therefore, a ruling case. It ·was recog-nised as a maritime contract, or the judg-ment of the circuit court would have been reversed, on the ground of usury. The whole argument went ·on the ground that it was a maritime contract, or it was void; if it was a pure maritime contract, the ad-miralty had jurisdiction to enforce it. 1 Pet. [26 U. S.] 409, 415, 437. This case is com-pletely covered by that of The Draco.

On the 1st April, 1840. Judge HOPKIN-SON delivered the following decree in the case: "I, Joseph Hopkinson, judge of the district court of the United States in and for the Eastern district of Pennsylvania, having duly considered the libel, answer, and repli-·cation, filed in this cause, as also the proofs exhibited on both sides, do thereupon ad-judge, order, and decree, that the libel be dismissed, and that judgment be entered for the respondents for costs."

On the 2d April, 1840, an appeal was entered and allowed upon this decree, to the circuit court of the United States, for the Third circuit. On the 12th May, 1840, the decree was affirmed in the circuit court, with costs.